IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| STEPHEN C. WALKER, PRO SE, | § | |
|    also known as | § | |
|    STEPHEN CLAYTON WALKER, | § | |
| TDCJ-CID No. 1417300, | § | |
| | § | |
|      Plaintiff, | § | |
| | § | |
| v. | § | 2:11-CV-0094 |
| | § | |
| MICHAEL D. SAVERS, | § | |
| JIMMY CORLEY, | § | |
| GRANDVILLE SANDERS, | § | |
| BRAD LIVINGSTON, | § | |
| SHAWN WATSON, | § | |
| RUSSELL BOCKMON, and | § | |
| OTHER UNKNOWN OFFICERS, | § | |
|     Defendants. | § | |

**ORDER SUPPLEMENTING AND ADOPTING
REPORT AND RECOMMENDATION;
ORDER DENYING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT;
ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT;
AND ORDER OF DISMISSAL**

This cause was vacated and remanded on November 10, 2014, to this Court for a

determination of whether plaintiff's objections were mailed and, by application of the Mailbox

Rule, filed on or before March 22, 2013 and, if the objections were determined to be timely filed,

for a review of the objected to portions of the Magistrate Judge's Report and Recommendation

*de novo.*

On November 12, 2014, the case was referred to the Magistrate Judge for a determination

of whether plaintiff's objections were timely filed and for further review.  On April 13, 2015, the

Magistrate Judge issued his Finding of Fact on Remand, finding that plaintiff's March 29, 2013 Objections to the March 8, 2013 Report and Recommendation were timely filed.

By his Objections, plaintiff reiterates his argument that Rule 44q is unconstitutionally vague both on its face and as applied in his disciplinary case, in that, he contends, no unsafe act was specified other than plaintiff getting burned. Plaintiff also argues the defendants are not entitled to qualified immunity on his conditions of confinement claims relating to his work conditions. He contends the Magistrate Judge has failed to construe defendant Sanders' statement in the light most favorable to plaintiff. Further, plaintiff contends he has shown "but for" causation with respect to his retaliation claims, and his retaliation claim on his contraband property disciplinary case is not barred by *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 2372, 129 L.Ed.2d 383 (1994).

**Rule 44q**

Rule 44q prohibits an inmate from committing an unsafe act. Plaintiff argues the rule is void for vagueness, both facially and as applied.

The void for vagueness doctrine only requires that the rule give fair warning of prohibited conduct. *Colten v. Kentucky*, 407 U.S. 104, 110, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972). An ordinance is not vague where it requires a person to conform his conduct to an imprecise but comprehensible normative standard; it is vague when no standard of conduct is specified at all. *Coats v. City of Cincinnati*, 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971).

Plaintiff offers no evidence showing the prohibition against committing an "unsafe act" specifies a standard of conduct which is not a comprehensible normative standard. Plaintiff has failed to present evidence Rule 44q is vague on its face.

2

As to its application to plaintiff's particular conduct, review of the disciplinary case on which plaintiff was found guilty on rehearing shows the unsafe act is described as follows: "[s]aid offender after operating the Mule and not allowing it to cool off did work on the Mule. Offender Walker then stood up and burned his face on the muffler." [Defendant's Exhibit F 13.] A person of ordinary intelligence would know to take care to avoid contact with the muffler at that point and to keep his head bent to the side away from it or to let it cool before standing because it would inevitably be hot enough to result in injury. Thus, Rule 44q, as applied to plaintiff, was not void for vagueness.

The Court notes plaintiff's written statement to prison officials states he burned himself on the exhaust pipes near the cylinder head because they lacked a heat shield, which he says made it unsafe to work near that part of the vehicle [Defendants Exhibit F 21], but plaintiff does not allege or present evidence that the defendants knew of the absence of a heat shield before he injured himself or that he reported the condition and was forced to work on the Kawasaki Mule after reporting it. Further, plaintiff blames his burn on a wet floor and insufficient lighting, claiming he had reported at some time in the past that the roof had leaks and there was insufficient lighting. Nevertheless, plaintiff's unsafe-act disciplinary charge was not based on any of these factors. To the extent plaintiff feels the disciplinary charge identified the wrong cause of the accident or the wet floor and insufficient lighting were a sufficient defense, these factors do not show that Rule 44q was unconstitutionally vague as applied to him.

Instead, such argument is only relevant as a challenge to the sufficiency of the evidence or the correctness of the disciplinary hearing officer's determination. It is settled law that federal courts do not review the sufficiency of evidence at a disciplinary hearing, and sufficient support

3

for a finding of guilt is provided by "some facts" or "any evidence at all." *Gibbs v. King*, 779

F.2d 1040, 1044 (5th Cir. 1986), *cert. denied*, 476 U.S. 1117, 106 S.Ct. 1975, 90 L.Ed.2d 659

(1986); *Smith v. Rabalais*, 659 F.2d 539, 545 (5th Cir. 1981), *cert. denied*, 455 U.S. 992, 102

S.Ct. 1619, 71 L.Ed.2d 853 (1982).  There was some evidence to support the hearing officer's

determination in this case.  Further, the sole punishment plaintiff received on this case was a

reprimand, and he was instructed to be more aware of his surroundings.  Therefore, in the wake

of *Sandin[1]*, plaintiff has no federally protected due process right with respect to this disciplinary

case.  Plaintiff has failed to show Rule 44q is unconstitutionally vague on its face or as applied.

**Defendants' Qualified Immunity on Conditions of Confinement Claims**

Plaintiff argues the Magistrate Judge erred in concluding the defendants were entitled to

qualified immunity on plaintiff's challenges to his conditions of confinement, *i.e.*, his work

conditions.

Qualified immunity shields government actors from liability in the performance of

discretionary functions unless their conduct violates clearly established statutory or constitutional

rights of which a reasonable person would have known.  *Babb v. Dorman*, 33 F.3d 472, 477 (5th

Cir. 1994).  "[Q]ualified immunity provides ample protection to all but the plainly incompetent

or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092,

89 L.Ed.2d 271 (1986).

Since qualified immunity depends on whether the defendant violated a clearly established

constitutional right, an inquiry must be made whether the plaintiff has asserted a violation of any

constitutional right at all.  *Siegert v. Gilley*, 500 U.S. 226, 231, 111 S.Ct. 1789, 1793, 114

---

[1]*Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

L.Ed.2d 277 (1991). Analysis at this stage is performed under the "currently applicable constitutional standards." *Rankin v. Klevenhagen*, 5 F.3d 103, 106 (5th Cir. 1993). The second prong of the qualified immunity test is whether the constitutional right alleged to have been violated was clearly established at the time of the incident; and, if so, whether the conduct of the defendant was objectively unreasonable in light of contemporaneous clearly-established law. *Hare v. City of Corinth*, 135 F.3d 320, 328 (1998). In deciding which of the two prongs to address first, the court may utilize its sound discretion in light of the circumstances in the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

Once the defendant has asserted his entitlement to qualified immunity, the burden shifts to the plaintiff to show that it does not bar his recovery. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Bennett v. City of Grand Prairie*, 883 F.2d 400, 408 (5th Cir. 1989).

The Eighth Amendment protects prisoners from cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 102-03, 97 S.Ct. 285, 290-291, 50 L.Ed.2d 251 (1976). Federal courts must ensure constitutional standards are enforced without assuming superintendence of jail administration. *Sampson v. King*, 693 F.3d 566, 568 (5th Cir. 1982) (*citing Jones v. Diamond*, 636 F.2d 1364, 1368 (5th Cir. 1981) (*en banc*), *cert. denied*, 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1982). "This policy of minimum intrusion is particularly important when a state prison system is involved." *Id.* (citing *Ruiz v. Estelle*, 679 F.2d 1115, 1145 (5th Cir. 1982); *Williams v. Edwards*, 547 F.2d 1206, 1212 (5th Cir. 1977).

In the operation of a prison, the state is not constitutionally required to observe all the safety and health standards applicable to private industry. *Sampson*, 693 F.2d at 569, (*citing*

5

*Ruiz*, at 1159)).  The state is not bound by the standards set by the safety codes of private

organizations.  *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520, 543 n.27, 99 S.Ct. 1861, 1876 n.27, 60

L.Ed.2d 447 (1979)).  Standards suggested by experts are merely advisory.  *Sampson*, 693 F.2d at

569, (citing *Bell*, at 543 n.27, 99 S.Ct. at 1876 n.27; *Ruiz*, at 1149-50).  A federal court required

to gauge the conduct of state officials must use minimum constitutional standards as the measure.

*Sampson v. King*, 693 F.3d at 569.

      The conditions plaintiff has alleged, being clothed in his regular prison clothing along

with a thermal undershirt and a jacket which was not waterproof and working year-round in a

shed with a concrete floor, a tin roof through which old nail holes allowed some rain or melting

snow, with tin walls which do not keep out all of the wind, with lighting from a single lightbulb

and no heating or cooling do not present the kind of conditions addressed in the cases he calls to

the Court's attention.  *Palmer v. Johnson*, 193 F.3d 346, 352-54 (5th Cir. 1999) ruled that

outdoor overnight confinement with no shelter, no protective clothing, so that inmate Palmer had

to withstand high winds and cold without a jacket or a blanket, and no means to dispose of bodily

waste, so that the inmate Palmer was forced to urinate and defecate in the confined area he shared

with forty-eight other inmates, was in that class of cases which presented prison conditions so

"base, inhuman, and barbaric" that they violate[d] the Eighth Amendment.  *Palmer v. Johnson*,

193 F.3d 346, 352-54 (5th Cir. 1999) (citing *Novak v. Beto*, 453 F.2d 661, 665 (5th Cir. 1971).

*Beck v. Lynaugh*, 842 F.2d 759, 761 (5th Cir. 1988) addressed conditions in inmate living

quarters where the windows were broken out and not repaired, letting all the elements in and

inmates were denied blankets or jackets to help them endure the resulting cold and rain.

Likewise, *Gates v. Collier*, 390 F.Supp. 3482 (N.D.Miss.1975), is one of series of cases

overseeing the reform of the Mississippi State Penitentiary at Parchman, Mississippi, and addressing, in relevant part, the renovation or construction of new housing facilities for the inmate population because of subhuman conditions based on the condemnation of the entire waste disposal system, inadequate bathroom facilities such as three wash basins, made of oil drums cut in half, to serve for eighty men, similarly few commodes, and showers, inadequate fire fighting equipment, broken windows stuffed with rags, frayed and exposed electrical wiring, and woefully inadequate medical staffing and facilities.  The conditions described by plaintiff do not approach the seriousness of the subhuman conditions found at Parchman.

As in *Novak* and *Palmer*, the *Parchman* Court noted that a common thread runs through many of their Eighth Amendment conditions of confinement cases, that is, the basic elements of hygiene.  *Gates v. Collier*, 501 F.2d 1291, 1301 (5th Cir. 1974).  An additional common thread is that these cases addressed conditions in which the inmates had to live beyond the limited hours devoted to their assigned work duties and where they slept.  Unlike the cases noted above, the conditions plaintiff challenges are in his work area, not his housing area, and did not "present a grave and immediate threat to health or physical well being." *Id.* (citations omitted).  The conditions of which plaintiff complains were far less harsh than those in the cases he cites and his exposure to them was limited to the hours he spent on his assigned work.

Lastly, *Foulds v. Corley*, 837 F.2d 52, 54 (5th Cir. 1976), also cited by plaintiff, involved a prisoner's solitary confinement cell, which was "extremely cold," where the inmate alleged he was forced to sleep on the concrete floor with rats crawling all over him.  This was a situation in which the inmate was exposed to the challenged conditions around the clock, without relief of any sort.

7

Prison conditions can be so bad that they constitute cruel and unusual punishment. *Sampson* at 568, (*citing Gates v. Collier*, 501 F.2d 1291, 1301 (5th Cir. 1974)). A court's determination of such an Eighth Amendment challenge must be based on a consideration of whether the totality of the circumstances violates "contemporary standards of decency." *Id.* at 569 (*citing Rhodes v. Chapman*, 452 U.S. 337, 345-50, 101 S.Ct. 2392, 2398-2400, 69 L.Ed.2d 59 (1981); *Stewart v. Winter*, 669 F.2d 328, 335-36 (5th Cir. 1982); *Jones v. Diamond*, 636 F.3d at 1368; *Cerrella v. Hanberry*, 650 F.2d 606, 607 (5th Cir. 1981), *cert. denied*, 454 U.S. 1034, 102 S.Ct. 573, 70 L.Ed.2d 478 (1982)).

Viewed in totality, the circumstances alleged by plaintiff, which involve only the time he spent at work, fall far short of those found by the Fifth Circuit to have constituted cruel and unusual punishment. Further they did not involve deprivation of the basic elements of hygiene or exposure to the elements without a blanket or jacket.

Plaintiff has not presented conditions of confinement which, considered in their totality, constituted cruel and unusual punishment under the Eighth Amendment. Plaintiff has failed to satisfy the first prong necessary to overcome defendants' entitlement to qualified immunity.

Plaintiff has failed to satisfy the second prong of qualified immunity as well. Even if it were determined that plaintiff had shown his work conditions constituted a violation of the Eighth Amendment, plaintiff has not shown that, "in the light of pre-existing law the unlawfulness [of plaintiff's working conditions would have been] apparent" to a reasonable prison official. *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

8

Plaintiff has failed to defeat defendants' entitlement to the defense of qualified immunity with respect to his conditions of confinement claims.

**Retaliation**

The Fifth Circuit, when addressing the issue of retaliatory disciplinary cases in *Woods v. Smith*, 60 F.3d 1161 (5th Cir. 1995), stressed that such claims must be regarded with skepticism, "lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." Id. at 1166 (citing *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994), cert. denied, 514 U.S. 1022, 115 S.Ct. 1371, 131 L.Ed.2d 227 (1995)). The *Woods* Court emphasized that to state a retaliation claim, "an inmate must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident – such as the filing of disciplinary reports . . . would not have occurred. [Emphasis added.]" Discussing the "significant burden" this placed upon the inmate/plaintiff, the *Woods* Court noted this burden could be satisfied by direct evidence of motivation or allegation of "a chronology of events from which retaliation may plausibly be inferred." *Id.*

The *Woods* Court held that a legitimate prison disciplinary report, while not an absolute bar to a retaliation claim, was still probative and potent summary judgment evidence . . .." *Id.* In the Fifth Circuit, a plaintiff must show that, but for a retaliatory motive, the inmate would not have been charged with the disciplinary offense. *Johnson v. Rodriguez*, 110 F.3d 299, 310-312 (5th Cir. 1997); *Randle v. Woods*, 299 Fed.Appx. 466, 468 (5th Cir. 2008); *Dixon v. Hastings*, 202 Fed.Appx. 750, 752 (5th Cir. 2006).

Plaintiff presents remarks allegedly made by defendants SANDERS and SAVERS and argues the Magistrate Judge failed to construe them in the light most favorable to the nonmovant, plaintiff. Plaintiff argues these remarks prove retaliatory intent.

As to the remark by defendant SANDERS, plaintiff says that when he returned from the infirmary, he told defendant SANDERS the accident was a "tort" and SANDERS told him he would receive a disciplinary case for engaging in an unsafe act that resulted in his being burned. Plaintiff alleges that when he said the case was retaliatory, SANDERS replied they were just covering themselves.

Plaintiff has accorded too much significance to these statements. One or two statements, which are susceptible of different interpretations, are insufficient to avoid summary judgment on claims of retaliation. *Ray v. Tandem Computers*, 63 F.3d 429, 436 (5th Cir. 1995)(supervisor's statement that "if you had not gone crying to your friends [in headquarters], you would not be in the position you are in" was not sufficient to show discrimination triggered by plaintiff Ray's complaints.).

Defendant SANDERS wrote his case for committing an unsafe act before plaintiff ever wrote defendant SAVERS and, in his Inter-Office Communication to Captain Stevens dated December 16, 2010 [plaintiff's Attachment 2 to his March 29, 2013 Objections], defendant SANDERS stated that defendant WATSON of Risk Management had advised him on the date of the accident that he might need to write plaintiff the case for committing an unsafe act. [Plaintiff's Attachment 2 to his March 29, 2013 Objections]. Plaintiff has not shown that, but for defendant SANDERS' retaliatory intent, he would not have received the disciplinary case for committing an unsafe act.

10

As to the remark by defendant SAVERS, plaintiff says that, at the January 5, 2011 Classification Hearing conducted by defendant Warden SAVERS, defendant SAVERS asked if plaintiff "kn[e]w what initiated all this, why all this happened?" Plaintiff says he responded it was because he had been burned. He states SAVERS shook his head and stated, "I'll tell you the truth. I initiated all this because of your first letter. You threatened me." Plaintiff says he asked SAVERS if he meant the presuit notice letter plaintiff sent and SAVERS responded, "Yes, that one. You threatened me." Plaintiff says he replied there was nothing threatening in the letter and defendant SAVERS told him to read it again.

This allegation does not support a claim of retaliation. If true, it only shows defendant SAVERS responded to what he felt was a threat by plaintiff. If defendant SAVERS thought plaintiff had threatened him, plaintiff cannot make a claim of retaliation because he has no constitutionally protected right to threaten a prison official, whether verbally or in writing.

Plaintiff also presents another version of defendant SAVERS' remark.

Plaintiff points the Court to Attachment 5 Walker 000134 attached to his March 29, 2013 Objections and argues it shows there was a connection between CORLEY's writing of the disciplinary cases and SAVERS' receipt of plaintiff's letter and his grievances, which he says triggered SAVERS' claimed retaliation. The document presented by plaintiff is a Grievance Investigation Worksheet by an Officer Tone, recording his investigation of plaintiff's grievance no. 2011079828, alleging retaliation by defendant SAVERS.

It shows that, at the Unit Classification Hearing, defendant SAVERS informed plaintiff he [SAVERS] had initiated the investigation that resulted in the disciplinary cases written by defendant CORLEY. Defendant SAVERS is reported to have said he felt plaintiff's remarks in

his letter and grievance showed plaintiff was going to injure himself and that plaintiff admitted to having destroyed state property. Under these circumstances, SAVERS' conduct would not amount to retaliation because it was SAVERS's duty as warden to have plaintiff's conduct examined by defendant CORLEY and any appropriate disciplinary cases written [Plaintiff's Attachment 5 to Walker 000134, plaintiff's March 29, 2013 Objections].

In his Affidavit [Defendants' Exhibit D3 to Defendants' Motion for Summary Judgment], defendant CORLEY averred he wrote his three disciplinary charges after being informed by defendants SANDERS and BOCKMAN that plaintiff had worked on and operated the Kawasaki Mule. Those cases were for (1) failure to obey orders; (2) destruction of state property for damaging the Mule by running it without the ordered parts; and (3) unauthorized use of tools for using tools to work on the Kawasaki when the additional parts had not arrived and CORLEY was not on unit. They were considered in a single disciplinary hearing at which plaintiff was found guilty and suffered a reduction in class, a temporary restriction on privileges, and was found liable for $206.00 in damages to state property. CORLEY averred that, at the time he wrote the cases, he did not know of any communications between plaintiff and defendant SAVERS. Instead, defendant CORLEY averred he first learned of the letter plaintiff says triggered SAVERS' alleged retaliatory intent, when he received notice of the instant lawsuit. [Defendants' Exhibit D3 to Defendants' Motion for Summary Judgment].

If, as shown by the evidence plaintiff has presented, defendant SAVERS initiated the investigation of plaintiff's conduct which ultimately resulted in defendant CORLEY's disciplinary cases, plaintiff has not presented evidence SAVERS did so because of retaliatory intent. Instead, plaintiff only shows that, in the performance of his duties as warden, defendant

SAVERS had an investigation done after he received information, in plaintiff's own letter, that plaintiff may have violated or was planning to violate prison rules. This will not support a claim of retaliatory intent by either SAVERS or CORLEY.

As explained in the Report and Recommendation, the summary judgment evidence presented by plaintiff does not show that plaintiff would not have received the challenged disciplinary cases "but for" a retaliatory motive by the defendants.

The Court emphasizes that conclusory claims of conspiracy are not sufficient to state a claim under section 1983, and plaintiff has failed to present evidence proving the existence of a conspiracy among the defendants to retaliate against him.

Plaintiff has failed to support his claims of retaliation with probative evidence.

**Property Confiscation Case**

Plaintiff also argues his final disciplinary case, for possession of contraband, specifically, a typewriter, is not barred by *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 2372, 129 L.Ed.2d 383 (1994) because he is claiming the case was triggered by defendant SAVERS' retaliatory intent.

Plaintiff contends that, on the day after the disciplinary hearing, two officers took all of plaintiff's personal property, saying defendant Warden SAVERS had ordered them to do so. After the property had been checked against plaintiff's property papers, some of it was returned. Some of the property, however, was confiscated, including a typewriter, which was retained for plaintiff's failure to have valid papers showing ownership.

To prove retaliation, plaintiff must overcome the hurdle of "but for" causation. The only evidence plaintiff has presented to support retaliatory intent is the remark by Warden SAVERS

13

during the UCC meeting which has previously been analyzed, and the statement of the two

confiscating officers that their order came from defendant Warden SAVERS.

The statement of the confiscating officers is too vague and susceptible of innocuous

interpretation to support a claim of retaliatory intent. *Ray v. Tandem Computers*, 63 F.3d 429,

436 (5th Cir. 1995). A plausible entitlement to relief exists when the allegations in the complaint

cross the thresholds separating the "conclusory" from the "factual" and the "factually neutral"

from the "factually suggestive." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 n.5, 127

S.Ct. 1955, 1966 n.5, 167 L.Ed.2d 929 (2007). This statement by the confiscating guards does

not reach the "factually suggestive" standard and is insufficient to avoid summary judgment on

plaintiff's retaliation claim.

Moreover, the probative evidence of record demonstrates the disciplinary case was

legitimate. Plaintiff's own pleading is that he was instructed to report to Officer Devaney, the

Gang Officer, who informed plaintiff he didn't have papers showing ownership of the

confiscated property. Plaintiff responded that he did have papers for his typewriter, explaining a

Ms. Byars had asked who didn't have property papers and then issued them to him when he said

he didn't have any papers for his typewriter [Plaintiff's Second Amended Complaint p. 11, par.

33]. Plaintiff says he was informed Ms. Byars "wasn't allowed to do this and that it would be

considered as establishing a[n] [improper] relationship." [Plaintiff's Second Amended

Complaint p. 11, par. 33].

Review of the Offense Report [Defendants' Exhibit F53] reveals that, to verify

ownership, Officer Devaney reviewed plaintiff's trust fund records and found no records showing

purchases of a radio, headphones, or typewriter. The property officer was also contacted and had

14

no records of plaintiff having purchased a typewriter, radio, or headphones.  Officer Devaney

notes that he questioned plaintiff about the property and plaintiff admitted the property was not

his.  Additionally, plaintiff admitted his property papers were not appropriately obtained.

[Defendants' Exhibit F53].

Review of the Disciplinary Hearing Report shows plaintiff pled guilty to the charge and

admitted the property was left behind by his cellie when he was released.  [Defendants' Exhibit

F51, F54].  Plaintiff does not dispute the foregoing and does not present summary judgment

evidence to rebut it.

Under the circumstances set forth above, the uncontroverted facts in evidence show the

confiscation of plaintiff's contraband property, including his typewriter was indisputably

legitimate, and this fact is probative and potent summary judgment evidence rebutting plaintiff's

claim of retaliation. *Woods v. Smith*, 60 F.3d 1161 (5th Cir. 1995).

The Court has made an independent examination of the records in this case and has

examined the Magistrate Judge's Report and Recommendation, as well as plaintiff's Objections

and the newly submitted evidence accompanying those Objections.

The Court is of the opinion that plaintiff's Objections should be OVERRULED and the

Report and Recommendation of the United States Magistrate Judge should be ADOPTED by the

United States District Court, as supplemented herein.

This Court, therefore, does OVERRULE plaintiff's Objections, and does hereby ADOPT

the Report and Recommendation of the United States Magistrate Judge, as supplemented herein.

IT IS THEREFORE ORDERED that the plaintiff's Motion for Partial Summary

Judgment is DENIED; defendant's Motion for Summary Judgment is GRANTED; and the

claims by plaintiff STEPHEN C. WALKER are DISMISSED WITH PREJUDICE.  Plaintiff's state law negligence claims, if any survive, are DISMISSED WITHOUT PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

It is SO ORDERED.

Signed this the _____ 16ᵗʰ _____ day of April, 2015.

_____
MARY LOU ROBINSON
United States District Judge

16